JUDGE FAILLA

22 CV 06958

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Cuiping Zhou,

Plaintiff,

-against-

TCHH-DayUp, Innifer, SUMGOGO, DLseego, NUER NEW, foliates, easygogo, Belsmi, Xiying, juntianshangmaoyouxiangongsi and RUIMO,

Defendants.

**Civil Action No.**

**COMPLAINT**

**JURY TRIAL DEMANDED**

**FILED UNDER SEAL**

**COMPLAINT**

Plaintiff Cuiping Zhou, by and through its undersigned counsel, as and for its Complaint against Defendants TCHH-DayUp, Innifer, SUMGOGO, DLseego, NUER NEW, foliates, easygogo, Belsmi, Xiying, juntianshangmaoyouxiangongsi and RUIMO (collectively "Defendants"), hereby allegesas follows:

**NATURE OF THIS PROCEEDING**

1. This is an action for patent infringement under 35 U.S.C. § 1, 35 U.S.C. § 271, *et seq.*, seeking injunctive relief and damages. All of the Defendants market and sell leaf pendant decorated wallets on the Amazon.com marketplace to consumers in the United States and New York which infringe Plaintiff's design patent for a wallet.

2. All of the Defendants hide behind Amazon's practice of allowing sellers to sell their products to consumers in the United States, while not requiring them to disclose their true identities or contact information – making the process of holding those sellers liable for their infringing acts under the patent laws extremely burdensome and often futile.

FILED
U.S. DISTRICT COURT
2022 AUG 16
S.D. OF N.Y.

**THE PARTIES**

3. Plaintiff Cuiping Zhou is an individual residing at 5 Nanmen St., Jiesheng Town, Shanwei City, Guangdong Province, PRC.

4. Plaintiff is running and operating her business of developing, marketing, selling, licensing and distributing wallets under the "UTO" brand –a trademark registered with the United States Patent and Trademark Office ("USPTO").

5. In the United States, Plaintiff sells products directly to consumers through its authorized seller account on Amazon.com.

6. Plaintiff is the owner of all rights to U.S. Patent No. D 927,179 S (the "'179 Patent"), including rights to sue for past infringement. A copy of the '179 Patent is attached as Exhibit A.

7. Defendants are all merchants who sell products that infringe the '179 Patent to consumers in the United States (including New York) on the Amazon.com marketplace, which, upon information and belief, is owned by Amazon.com, Inc., a Delaware corporation with a principal place of business at 410 Terry Avenue North, Seattle, WA 98109.

8. Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their user accounts and merchant storefronts on Amazon as well as potential yet undiscovered additional online marketplace platforms.

9. Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities or lower prices, description of the goods offered and of the counterfeit products themselves offered for sale.

## JURISDICTION AND VENUE

10. Because Plaintiff asserts claims under a federal statute, 35 U.S.C. § 1, *et seq.*, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11. Personal jurisdiction exists over Defendants in this judicial district pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 302(a)(1) and 302(a)(3) because Defendants operate seller accounts on Amazon.com, through which they advertise, offer for sale and sell, the infringing products to consumers in New York and that infringing activity gives rise to Plaintiff's federal infringement claims.

12. Venue is proper in this Court pursuant to 28 U.S. Code § 1391 for the samereasons that jurisdiction is proper in this Court.

13. Joinder of Defendants is proper because, upon information and belief, many Defendant sellers are owned and operated by the same persons and/or entities and or assist each other in the accused infringing activities.

14. Joinder of Defendants is proper also because Plaintiff's right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and questions of fact common to all defendants will arise in this action.

## FACTUAL BACKGROUND

### I. The '179 Patent.

15. The '179 Patent is an ornamental design patent entitled wallets, which discloses a design for a small carry-on bag, such as a wallet and handbag. Some of the images from the '179 Patent (Ex. A) are depicted below. The stitching parts of the design that are represented by the broken lines, are claimed in the patent.




FIG. 2

16. Cuiping Zhou has filed the '179 Patent on August 12, 2019, and the USPTO legally issued the Patent Certificate to its inventor and applicant, Cuiping Zhou, on August 10, 2021. *See* Exhibit A. The wallet's opening is designed with a metal lock, links with three metal rings and a leaf shape pendant (the "Leaf Shape Wallet Opening").

17. Prior to Plaintiff's invention, wallets' openings, as listed below were usually designed with button opening, metal opening, zipper opening or strap opening.

| Prior Designs Sold in the Marketplace | |
|---|---|
| *Button wallet opening Design sold by Valentino* | *Metal wallet opening Design sold by Louis Vuitton* |
|  |  |

| Prior Designs and similar wallets sold in the Marketplace | |
|---|---|
| *Zipper wallet opening Design sold by Michael Kors*   | *Strap wallet opening Design sold by Fossil*   |

18. These prior designs were easily inferior to Plaintiff's designs. For example, the zippered wallet always gets stuck and is difficult to open. Also, it is common to observe that numerous wallets are designed to open by pinching the button, which is not as convenient as Plaintiff's design.

19. The Leaf Shape Wallet Opening is not only for environmentally friendly decoration but also enable user easier to identify the wallet opening that just needs to pinch the leaf shape pendant and open the wallet. The metal lock and three metal rings make the Leaf Shape Wallet Opening strong enough and also make it long enough that the leaf shape pendant is over the edge of the wallet, as a result, users would easier to pinch the leaf shape pendant and open the wallet.

20. Plaintiff sells different types of wallets or handbags with Leaf Shape Wallet Opening in the Amazon marketplace. *See* Exhibit B.

21. None of the prior designs in the marketplace had a Leaf Shape Wallet Opening that looked anythinglike Plaintiff's patented design, such that any consumer viewing wallets with the infringing Leaf Shape Wallet Opening would assume that they were the same as the Leaf Shape Wallet Opening in Plaintiff's patented wallet or assume that the wallet with the infringing Leaf Shape Wallet Opening was sold and/or manufactured by Plaintiff.

## II. <u>Plaintiff's Use of the Patented Designs</u>.

22. Plaintiff has been manufacturing, selling, and advertising her ornamental designed wallets with Leaf Shape Wallet Opening embodying the designs disclosed in the '179 Patent since at least April 9, 2018, when it first made those products available on its storefront hosted on the Amazon.com platform within the United States.

23. Plaintiff's wallet containing embodiments of these designs, are shown below:



## III. **Defendant's Infringement of the Patented Designs.**

24. Starting in July 2019 and continuing today, especially after the second half of 2020, numerous sellers have been, andare selling, on Amazon, leaf pendant decorated wallets which infringe the '179 Patent.




25. Information identifying the infringing wallets sold by all of the Defendants, including the Amazon Standard Identification Numbers (ASINs) for the infringing wallets and

images of the products taken from Defendants' Amazon webpages are set forth below and also see Exhibit C:

| # | SELLER | PRODUCT OFFERING | AMAZON ASIN |
|---|---|---|---|
| | **PLAINTIFF**<br>Cuiping Zhou |  | B07YS61GS5 |
| | | | |
| 1. | DEFENDANT<br>TCHH-DayUp |  | B08P1XFWPD<br>B092VKW6C2<br>B08P1X4LJY<br>B08P1TRCV4<br>B08P1XWFQ8<br>B092VM3HCR<br>B092VN3BB2<br>B08P1WSZ23 |
| 2. | DEFENDANT<br>Innifer | | B096FRWZYT<br>B096FRRCD7<br>B092ZQXC67<br>B092ZPWSZX<br>B092ZP8NJB<br>B092ZQ1DQW<br>B092ZNMHYR |

| | | | |
|---|---|---|---|
| | |  | B092ZPZ5YC<br>B08RYFQD2V<br>B08RYG4Q48<br>B0943TBQZR<br>B08RYFVVGF<br>B08RYDSP1R<br>B08RYF5MTK<br>B08RYFB3NY<br>B0943PK81G |
| 3. | DEFENDANT SUMGOGO |  | B096F98YR8<br>B096F7DTG2<br>B096F86PP7<br>B096F8GK7F<br>B096F91V7B |
| 4. | DEFENDANT DLseego |  | B07V6GDN9H<br>B07V6H3YFV<br>B07V6HSD5K<br>B07ZV7657D<br>B07ZV6MV2M<br>B07ZV6M8PF<br>B07ZV7RX7V |
| 5. | DEFENDANT NUER NEW | | B09Q11PP6W |

| | | | |
|---|---|---|---|
| | |  | B09Q12HJZV |
| 6. | DEFENDANT<br>foliates |  | B09N8WBN42<br>B09N8S5YL8<br>B09N8LVHGH<br>B09N8QFD6M<br>B09N95L1L4<br>B09N922P8B |
| 7. | DEFENDANT<br>easygogo |  | B096RFYLMH<br>B096RFLZWL<br>B096RHHZB1<br>B096RGKK3M<br>B096RHGSS5 |
| 8. | DEFENDANT<br>Belsmi |  | B09895QNL8<br>B0989K1LNP<br>B0989WY18S<br>B09894C7JF<br>B0988SJVP4<br>B0988TVLLN |

| | | | |
|---|---|---|---|
| 9. | DEFENDANT Xiying |  | B0917CW7ZH<br>B0917B1SYJ<br>B08HWY3H6P<br>B08HWWQPPD<br>B08HWXV45F<br>B08HWY55KM |
| 10. | DEFENDANT juntianshangmaoyouxiangongsi |  | B08RCSMG2R<br>B08RCS5F2X<br>B08RCS8P6W<br>B08RCS12Z6<br>B08RCRW5TZ |
| 11 | DEFENDANT RUIMO |  | B09Q153QQ3 |

26. As can be seen by a comparison of the images of the wallets sold by the infringing Defendants with Plaintiff's patented design (which is the Federal Circuit's test for design patent infringement), the ornamental design for each of the infringing wallets is virtually identical to the

wallets sold by the Plaintiff and are virtually identical to the images disclosed in the '179 Patent. There is thus no doubt that each of these Defendants imports, markets, sells and offers to sell wallets that infringe the '179 Patent, and that Plaintiff is thus entitled to relief.

## IV. The Impact of Defendant's Infringement on Plaintiff.

27. The impact of the Defendants' infringement has been devastating. As a new product, there shall be several years of a product life cycle, the sales rate shall normally grow very fast in the early stage. For the year prior to many infringers entering the market in 2018-2019, the product sales rate grows 399.2% and the sales revenue grows 407% from 2018 to 2019.

28. After some infringers entered the market in 2020, the product's sales growth rate decreased from 399.2% to 141.8%, recording a negative two hundred and fifty-seven point four percentage (-257.4%) change, and the revenue growth rate decreased from 407% to 137.5%, recording a negative two hundred and sixty-ninth point five (-269.5%) change.

29. After many infringers entered the market in 2021, the product's sales growth rate has a negative growth of thirty-eight point 3 percent (-38.3%), recording a negative one hundred and eighty point one percent (-180.1%) change, and the revenue has a negative growth of one hundred and seventy-ninth point three percent (-179.3%), recording a negative one hundred and seventy-ninth point three percent (-179.3%) change. *See* Exhibit D.

| **Year** | **Units Sold** | **Growth Rate** | **% Change** | **Revenue** | **Growth Rate** | **% Change** |
|---|---|---|---|---|---|---|
| **2018/05 -05/07/2019** | 12,077 | \ | \ | $167,640.83 | \ | \ |
| **05/08/2019-05/07/2020** | 48,223 | 399.2% | 399.2% | $682,302.82 | 407% | 407% |
| **05/08/2020-05/07/2021** | 68,380 | 141.8% | **-257.4%** | $938,425.33 | 137.5% | **-269.5%** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **05/08/2021-05/07/2022** | 42,238 | **-38.3%** | **-180.1%** | $542,629.46 | **-42.2%** | **-179.3%** |

30. The plaintiff suffers loss after more and more infringers entered the market. For example, for the year prior to many infringers entering the market (May 2020 through May 2021), Plaintiff sold 68,380 wallets containing its patented ornamental design, resulting in approximately $938,425.33 in annual sales.

| **Year** | **Units Sold** | **Metric Change** | **% Change** | **Revenue** | **Metric Change** | **% Change** |
|---|---|---|---|---|---|---|
| **05/08/2020-05/07/2021** | 68,380 | 20,147 | 141.8% | $938,425.33 | $256,122 | 137.5% |
| **05/08/2021-05/07/2022** | 42,238 | **-26,142** | **-38.3%** | $542,629.46 | **-$395,796** | **-42.2%** |

31. For the same one-year period *after* many infringers entered the market (May 2021 through May 2022), Plaintiff sold 42,238 units, resulting in $542,629.00 in sales - a reduction in annual unit sales of 38.3% and annual revenue of 42.2%.

32. In another example, one of Plaintiff's best sell products "UTO Small Wallet for Women Girls Wallet Leather Vegan Leaf Pendant Card Holder Organizer Zipper Coin Purse", SKU #18000452-3A, which is infringed by many sellers on Amazon, its annual unit sales from May 2021 to May 2022 decrease 2,193 unit and $30,127, which decreased 38.1% units sales and 40.32% revenue.

| Year | Units Sold | Metric Change | % Change | Revenue | Metric Change | % Change |
|---|---|---|---|---|---|---|
| **05/08/2020-05/07/2021** | 5751 | \ | \ | $74,712 | \ | \ |
| **05/08/2021-05/07/2022** | 3558 | **-2193** | **-38.1%** | $44,583 | **-$30,127** | **-40.32%** |

33. Further, Plaintiff's sales of wallets with its patented ornamental design are trending downward with the entry of more and more infringers on the market. For example, whereas before any infringers appeared on the market, Plaintiff was growing 407 % sales of the avenue, but currently has negative growth one hundred and seventy-ninth point three percent (-179.3%) change.

34. Moreover, Plaintiff's loss in sales and market share due to the Defendants' sale of infringing products appears to be related, in part, to the sales prices offered by the Defendants. For example, Defendant INNIFER offers its infringing wallets for $9.99, Defendant Tchh-DayUp offers its infringing wallets for $11.29, and Defendant Nuer New offers its infringing wallets for $10.99.

35. Because Amazon is primarily an online retailer and consumers cannot normally physically view and inspect the products before making their purchase, the offer of these drastically lower prices is a powerful driver of sales to those merchants and away from other merchants who may be offering similar products at higher prices.

36. The presence of these infringers offering knockoffs of Plaintiff's patented wallets at prices that were anywhere from 24% to 33.3% lower than Plaintiff's prices forced Plaintiff to reduce the price of its wallets from $14.99 to $11.99, some wallets reduce from $25 to $15.99 just in order to compete a reduction of more than thirty-three percent (13% to 63%) of its original sales

price. *See* Exhibit E.

37. Finally, because Defendants' wallets are cheaper in quality than Plaintiff's patented wallets, Plaintiff is concerned that consumers will mistakenly confuse Defendants' infringing wallets with Plaintiff's wallets and mistakenly believethat Plaintiff's wallets are of cheap quality because the Leaf Shape Wallet Opening in Defendants' wallets are indeed cheaper in quality than Plaintiff's wallets.

38. The creation of this negative marketplace impression will, no doubt, negatively impact the reputation of Plaintiff's company as a manufacturer of quality products.

## V. The Interrelations of Defendant's Operations.

39. When Plaintiff compared the images of the infringing wallets used on the websites of Defendants, Plaintiff noticed that the images of their products were sometimesthe same or substantially similar, leading Plaintiff to suspect that perhaps the Defendants are the same entity, or working together.

40. The wallets obtained from these Defendants were virtually identical, including the shapes, colors, weight, and overall quality of the wallets.

41. As experienced merchants, who have dealt with numerous products of this type and quality before, at stores, trade shows and factories, Plaintiff strongly suspects that these infringing wallets came from the same source, further confirming that Defendants are part ofthe same enterprise and/or working together.

## FIRST CAUSE OF ACTION
### Infringement of the 179 Patent

42. Plaintiff repeats and realleges Paragraphs 1-41 as if set forth fully herein.

43. Plaintiff is the owner, by assignment, of all rights to the '179 Patent, including

rights to enforce for past infringement.

44. The '179 Patent discloses the designs for certain wallets.

45. The '179 Patent is valid and enforceable.

46. Defendants sell wallets with Leaf Shape Wallet Opening that infringe the design disclosed in the '179 Patent.

47. Defendants sell infringing products directly to consumers in the United States and New York through their stores on the Amazon.com marketplace that are all available to consumers in the United States, including New York. *See* Exhibit F.

48. A side-by-side comparison between the accused products and the design disclosed in the '179 Patent shows that the Defendants' products infringe the '179 Patent.

49. Because Plaintiff sells products that embody the designs in the '179 Patent through the same channels as Defendants, including through stores on the Amazon.com marketplace, Plaintiff has been harmed including by, but not limited to, a loss in sales, a loss ofmarket share, price erosion, loss of market opportunity and loss in reputation to its business andits products, since Defendants' products are inferior knock-offs.

50. By these infringing acts, Defendants have irreparably harmed Plaintiff and such injury will continue and grow unless Defendants are enjoined by this Court.

**SECOND CAUSE OF ACTION**
**Unfair Competition**
**[New York Common Law]**

51. Plaintiff repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52. By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit

Products, Defendants have traded off the extensive goodwill of Plaintiff and its wallets to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

53. Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

54. Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

55. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

56. As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its wallets in an amount

as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its patented Wallets as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

57. As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment as follows:

(1) Holding that Defendants' accused products infringe the '179 Patent;

(2) Holding that Defendants' infringement was willful and deliberate, and deeming this case an exceptional case under 35 U.S.C. § 285;

(3) Preliminarily and permanently enjoining Defendants, their affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with Defendants, from infringing or inducing infringement of the '179 Patent and, specifically, from directly or indirectly making, using, selling, or offering for sale any products embodying the designs of '179 Patent during its term;

(4) Awarding Plaintiff damages in connection in an amount to be determined at trial, and the trebling thereof, pursuant to 35 U.S.C. § 284 or, alternatively, damages based on an accounting of Defendants' profits derived from their acts of infringement;

(5) Awarding Plaintiff its costs pursuant to 35 U.S.C. § 284 and its reasonable attorney's fees pursuant to 35 U.S.C. § 285;

(6) For an award of damages to be proven at trial for common law unfair competition; and

(7) Awarding such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 26, 2022
New York, New York

Respectfully submitted,

/s/ *Ruixin Lu*

Ruixin Lu, Esq. (RL2058)
Jiyuan Zhang, Esq. (JZ7401)
**ZHONGHAO LAW FIRM, LLP**
21FL, IBM Tower, 590 Madison Ave.,
New York, NY 10022
Tel: (216) 334-8245
Fax: (917) 398-8696
ray@zhhlaw.com
jerry1@zhhlaw.com

*Attorneys for Plaintiff Cuiping Zhou*